IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

RICHARD S. LEE,

    Plaintiff,

vs.                                    CASE NO.:

ACTELION PHARMACEUTICALS US,    10-CA-004160
INC., a foreign corporation,                 Judge: Fuller, Joseph C

    Defendant.

_____/

**FILED OCT 0 7 2010** CHARLIE GREEN, CLERK CIRCUIT/COUNTY COURTS BY _____ D.C.

### COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiff, RICHARD S. LEE ("LEE"), sues Defendant, ACTELION PHARMACEUTICALS US, INC. ("ACTELION"), and alleges:

### JURISDICTION, PARTIES, VENUE, FACTS COMMON TO ALL COUNTS

    1.    This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of attorney's fees and costs.

    2.    Plaintiff LEE is a Florida resident and citizen, residing in Lee County, Florida.

    3.    Defendant ACTELION is a foreign corporation transacting business in Lee County, Florida.

    4.    Venue is proper in Lee County, Florida because all causes of action set forth herein accrued in Lee County, Florida.

    5.    At all times pertinent, Plaintiff owned certain vested, unexercised equity in Actelion, Ltd issued before 2005 ("the Equity") under the Actelion Ltd 2000 Employee Stock Option Plan ("the Plan"), in which Plaintiff LEE was a participant. A true and correct copy of the Plan is attached hereto as **Exhibit "A."**

6. Defendant ACTELION served as Plan Administrator for the Plan via certain Defendant ACTELION officers, employees and/or representatives acting within the scope of their employment with Defendant ACTELION.

7. Plaintiff LEE has retained counsel and is obligated to pay a fee for services rendered.

## COUNT I – NEGLIGENT MISREPRESENTATION

8. Plaintiff LEE re-alleges and re-incorporates Paragraphs 1 through 7 above as if set forth fully herein.

9. As Plan Administrator, Defendant ACTELION owed Plaintiff LEE a duty to use reasonable care in the administration of the Plan, including without limitation Defendant ACTELION's communications with Plaintiff LEE regarding Plaintiff LEE's rights and responsibilities under the Plan.

10. On or about February 17, 2010, Christina Kwan, HR Administrator for Defendant ACTELION, sent Plaintiff LEE a letter to his residence in Lee County, Florida ("the February 17, 2010 Letter) instructing Plaintiff LEE that he had thirty (30) days within which he could make transactions involving the Equity as follows: (A true and correct copy of Ms. Kwan's February 17, 2010 letter is attached hereto as **Exhibit "B."**)

> If you have any vested, unexercised Actelion equity, please note that you have the following time frame to transact.
>
> - 30 days from your termination day for equity which were issued before 2005.
> - 60 days from your termination day for equity which were issued after 2005.

11. On March 15, 2010, in reliance on ACTELION's foregoing representation, Plaintiff LEE attempted to make a transaction with the Equity, to wit, Plaintiff LEE attempted to sell all of the Equity.

12. When Plaintiff LEE inquired into why he could not make the transaction, he was told that the Equity had a March 15, 2010 expiration date.

13. In stating that Plaintiff LEE had thirty (30) days to make transactions involving the Equity, Defendant ACTELION made a statement concerning a material fact that Defendant ACTELION believed to be true but was false. As such Defendant ACTELLION breached its duty to Plaintiff LEE.

14. Defendant ACTELION was negligent in making the above false statement because Defendant ACTELION should have known that the statement was false.

15. Defendant ACTELION intended for Plaintiff LEE to rely on the above false statement.

16. Plaintiff LEE was justified in relying on the above false statement of Defendant ACTELION.

17. As a direct and proximate result of Defendant ACTELION's breach of duty and negligent misrepresentation, Plaintiff LEE sustained damages, including but not limited to financial loss.

WHEREFORE, Plaintiff, RICK LEE, demands judgment against Defendant, ACTELION PHARMACEUTICALS US, INC., for money damages, special damages, costs, pre-judgment interest and such further relief as this Court deems just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY

18. Plaintiff LEE re-alleges and re-incorporates Paragraphs 1 through 7 above as if set forth fully herein.

19. As Plan Administrator, Defendant ACTELION served the Plan in a fiduciary capacity with respect to the participants of the Plan, such as Plaintiff LEE. As Plan Administrator, Defendant ACTELION acquired influence over participants of the Plan, such as Plaintiff LEE.

20. On or about February 17, 2010, Christina Kwan, HR Administrator for Defendant ACTELION, sent Plaintiff LEE a letter to his residence in Lee County, Florida ("the February 17, 2010 Letter) instructing Plaintiff LEE that he had thirty (30) days within which he could make transactions involving the Equity as follows: (A true and correct copy of Ms. Kwan's February 17, 2010 letter is attached hereto as **Exhibit "B."**)

> If you have any vested, unexercised Actelion equity, please note that you have the following time frame to transact.
>
> - 30 days from your termination day for equity which were issued before 2005.
> - 60 days from your termination day for equity which were issued after 2005.

21. On the evening of March 15, 2010, in reliance on ACTELION's foregoing representation, Plaintiff LEE attempted to make a transaction with the Equity, to wit, Plaintiff LEE attempted to sell all of the Equity.

22. When Plaintiff LEE inquired into why he could not make the transaction, he was told that the Equity had a March 15, 2010 expiration date.

23. In stating that Plaintiff LEE had thirty (30) days to make transactions involving the Equity when Plaintiff LEE did not have thirty (30) days to make transactions, Defendant

ACTELION abused the influence Defendant ACTELION acquired over Plaintiff LEE to the detriment of Plaintiff LEE.

24. As a direct and proximate result of Defendant ACTELION's breach of fiduciary duty, Plaintiff LEE sustained damages, including but not limited to financial loss.

WHEREFORE, Plaintiff, RICHARD S. LEE, demands judgment against Defendant, ACTELION PHARMACEUTICALS US, INC., for money damages, special damages, costs, pre-judgment interest and such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

> WELDON & ROTHMAN, PL
> 7935 Airport-Pulling Rd., N. ste. 205
> Naples, FL 34109
> Tel: (239) 262-2141
> Fax: (239) 262-2342
>
> By: _____
> Bradley P. Rothman
> Florida Bar No.: 0677345
> Attorney for Plaintiff

**ACTELION Ltd**
**2000 EMPLOYEE STOCK OPTION PLAN**

### ARTICLE ONE

### GENERAL PROVISIONS

I. **PURPOSE OF THE PLAN**

This 2000 Stock Option Plan is intended to promote the interests of Actelion Ltd, a Swiss company, by providing eligible persons with the opportunity to acquire a proprietary interest, or otherwise increase their proprietary interest, in the Corporation as an incentive for them to remain in the service of the Corporation.

Capitalized terms herein shall have the meanings assigned to such terms in the attached Appendix.

II. **ADMINISTRATION OF THE PLAN**

A. The Plan shall be administered by the Board under advice of the Strategy Board (SB). However, any or all administrative functions otherwise exercisable by the Board may be delegated to the SB or a Committee thereof. Members of the Committee shall serve for such period of time as the Board may determine and shall be subject to removal by the Board at any time. The Board may also at any time terminate the functions of the Committee and reassume all powers and authority previously delegated to the Committee.

B. The Plan Administrator shall have full power and authority (subject to the provisions of the Plan) to establish such rules and regulations as it may deem appropriate for proper administration of the Plan and to make such determinations under, and issue such interpretations of, the Plan and any outstanding options as it may deem necessary or advisable. Decisions of the Plan Administrator shall be final and binding on all parties who have an interest in the Plan or any option or shares issued thereunder.

C. The Corporation shall fulfill the reporting obligations set forth by the applicable Federal, Cantonal and communal tax codes.

III. **ELIGIBILITY**

The persons eligible to obtain rights to acquire options under the Plan are as follows:

(i) Employees of the Corporation and of its subsidiaries,

(ii) Non-employee members of the Board or the non-employee members of the board of directors of any Subsidiary, and

(iii) Consultants and other independent advisors who provide services to the Corporation (or any Subsidiary).

**Exhibit A**

None of the three original founders of the Corporation shall be eligible to acquire options under the Plan.

The Plan Administrator shall have full authority to determine which eligible persons are to receive rights to acquire options under the Plan, the time or times when such option grants are to be made, the number of shares to be covered by each such grant, the time or times at which each option is to become exercisable, the vesting schedule (if any) applicable to the option shares and the maximum term for which the option is to remain outstanding.

### IV. STOCK SUBJECT TO THE PLAN

A. The stock issuable under the Plan shall be shares of authorized but unissued or reacquired Common Stock. The maximum number of shares of Common Stock which may be issued over the term of the Plan shall not exceed 240'000 (two hundred forty thousand) shares.

B. Shares of Common Stock subject to outstanding options shall be available for subsequent issuance under the Plan to the extent (i) the options expire or terminate for any reason prior to exercise in full or (ii) the options are cancelled in accordance with the cancellation-regrant provisions of Article Two. All shares issued under the Plan, whether or not those shares are subsequently repurchased by the Corporation pursuant to its repurchase rights under the Plan, shall reduce on a share-for-share basis the number of shares of Common Stock available for subsequent issuance under the Plan.

C. Should any change be made to the Common Stock by reason of any stock split, stock dividend, recapitalization, combination of shares, exchange of shares or other change affecting the outstanding Common Stock as a class without the Corporation's receipt of consideration, appropriate adjustments shall be made to (i) the maximum number and/or class of securities issuable under the Plan and (ii) the number and/or class of securities and the exercise price per share in effect under each outstanding option in order to prevent the dilution or enlargement of benefits thereunder. The adjustments determined by the Plan Administrator shall be final, binding and conclusive. In no event shall any such adjustments be made in connection with the conversion of one or more outstanding shares of the Corporation's preferred stock into shares of Common Stock.

### ARTICLE TWO

### OPTION GRANT PROGRAM

### I. OPTION TERMS

Each option shall be evidenced by one or more documents in the form proposed by the Plan Administrator; provided, however, that each such document shall comply with the terms specified below. Each document evidencing an Incentive Option shall, in addition, be subject to the provisions of the Plan applicable to such options.

#### A. Exercise Price

1. The sale price of the options and their exercise price per share shall be fixed by the Plan Administrator; the exercise price is the average closing price that was reached for the Actelion share at the stock market during the month preceding the Optionee's signing and returning his/her employment/service agreement.

2.      The exercise price shall become immediately due upon exercise of the option and shall, subject to the provisions of Section I of Article Three and the documents evidencing the option, be payable by bank transfer or check made payable to the Corporation.

B.      **Exercise and Term of Options**. Each option shall be exercisable at such time or times, during such period and for such number of shares as shall be determined by the Plan Administrator and set forth in the documents evidencing the option. However, no option shall have a term in excess of ten (10) years measured from the date of adoption of the Plan.

C.      **Effect of Termination of Service**.

1.      The following provisions shall govern the exercise of any options held by the Optionee at the time of cessation of Service or death:

(i)     Any option outstanding at the time of the Optionee's cessation of Service for any reason shall remain exercisable for such period of time thereafter as shall be determined by the Plan Administrator and set forth in the documents evidencing the option, but no such option shall be exercisable after the expiration of the option term.

(ii)    Any option exercisable in whole or in part by the Optionee at the time of death may be exercised subsequently by the personal representative of the Optionee's estate or by the person or persons to whom the option is transferred pursuant to the Optionee's will or in accordance with the laws of descent and distribution.

(iii)   During the applicable post-Service exercise period, the option may not be exercised in the aggregate for more than the number of vested shares for which the option is exercisable on the date of the Optionee's cessation of Service. Upon the expiration of the applicable exercise period or (if earlier) upon the expiration of the option term, the option shall terminate and cease to be outstanding for any vested shares for which the option has not been exercised. However, the option shall, immediately upon the Optionee's cessation of Service, terminate and cease to be outstanding to the extent the option is not otherwise at that time exercisable for vested shares.

(iv)    Should the Optionee's Service be terminated for Cause, then all outstanding options, including vested options, held by the Optionee shall terminate immediately and cease to be outstanding.

(v)     In the event of an Involuntary Termination following a Corporate Transaction, the provisions of Section III of this Article Two shall govern the period for which the outstanding options are to remain exercisable following the Optionee's cessation of Service and shall supersede any provisions to the contrary in this section.

2.      The Plan Administrator shall have the discretion, exercisable either at the time an option is granted or at any time while the option remains outstanding, to:

(i)     extend the period of time for which the option is to remain exercisable following Optionee's cessation of Service or death from the limited period otherwise in effect for that option to such greater period of time as the Plan Administrator shall deem appropriate, but in no event beyond the expiration of the option term, and/or

(ii) permit the option to be exercised, during the applicable post-Service exercise period, not only with respect to the number of vested shares of Common Stock for which such option is exercisable at the time of the Optionee's cessation of Service but also with respect to one or more additional installments in which the Optionee would have vested under the option had the Optionee continued in Service.

D. **Stockholder Rights**. The holder of an option shall have no stockholder rights with respect to the shares subject to the option until such person shall have exercised the option, paid the exercise price and become a holder of record of the purchased shares.

E. **Restricted Transferability of Options**. During the lifetime of the Optionee, an option shall be exercisable only by the Optionee and shall not be assignable or transferable other than by will or by the laws of descent and distribution following the Optionee's death.

F. **Withholding**. The Corporation's obligation to deliver shares of Common Stock upon the exercise of any options granted under the Plan shall be subject to the satisfaction of all applicable Federal, Cantonal and local income and employment tax withholding requirements.

## II. CORPORATE TRANSACTION

A. In the event of any Corporate Transaction, each outstanding option shall automatically accelerate so that each such option shall, immediately prior to the effective date of the Corporate Transaction, become fully exercisable for all of the shares of Common Stock at the time subject to such option and may be exercised for any or all of those shares as fully-vested shares of Common Stock. However, an outstanding option under the Plan shall not so accelerate if and to the extent: (i) such option is, in connection with the Corporate Transaction, either to be assumed by the successor corporation (or parent thereof) or to be replaced with a comparable option to purchase shares of the capital stock of the successor corporation (or parent thereof), (ii) such option is to be replaced with a cash incentive program of the successor corporation which preserves the spread existing on the unvested option shares at the time of the Corporate Transaction and provides for subsequent payout in accordance with the same vesting schedule applicable to such option. The determination of option comparability under clause (i) above shall be made by the Plan Administrator, and its determination shall be final, binding and conclusive.

B. Immediately following the consummation of the Corporate Transaction, all outstanding options shall terminate and cease to be outstanding, except to the extent assumed by the successor corporation (or parent thereof).

C. Each option which is assumed in connection with a Corporate Transaction shall be appropriately adjusted, immediately after such Corporate Transaction, to apply to the number and class of securities which would have been issuable to the Optionee in consummation of such Corporate Transaction, had the option been exercised immediately prior to such Corporate Transaction. Appropriate adjustments shall also be made to (i) the number and class of securities available for issuance under the Plan following the consummation of such Corporate Transaction and (ii) the exercise price payable per share under each outstanding option, provided the aggregate exercise price payable for such securities shall remain the same.

D. The Plan Administrator shall have full power and authority to grant options which will automatically accelerate in the event the Optionee's Service subsequently terminates by reason of an Involuntary Termination within a designated period (not to exceed eighteen (18) months) following the effective date of any Corporate Transaction in which those options are assumed or replaced and do not otherwise accelerate. Any options so accelerated shall remain exercisable for fully-vested shares until the earlier of (i) the expiration of the option term or (ii) the expiration of the one (1)-year period measured from the effective date of the Involuntary Termination.

E. The allocation of options under the Plan shall in no way affect the right of the Corporation to adjust, reclassify, reorganize or otherwise change its capital or business structure or to merge, consolidate, dissolve, liquidate or sell or transfer all or any part of its business or assets.

### III. CANCELLATION AND REGRANT OF OPTIONS

The Plan Administrator shall have the authority to effect, at any time and from time to time, with the consent of the affected option holders, the cancellation of any or all outstanding options under the Plan and to grant in substitution therefore new options covering the same or different number of shares of Common Stock but with an exercise price per share based on the Fair Market Value per share of Common Stock on the new option grant date.

### ARTICLE THREE

### MISCELLANEOUS

### I. EFFECTIVE DATE AND TERM OF PLAN

A. The Plan became effective when authorised by the Corporation's General Meeting of Shareholders on April 16, 2000.

B. The Plan shall terminate upon the earliest (i) ten (10) years after the date of adoption of the Plan (April 15, 2010) (ii) the date on which all shares available for issuance under the Plan shall have been issued or (iii) the termination of all outstanding options in connection with a Corporate Transaction. Upon the latter Plan termination, all options outstanding under the Plan shall continue to have full force and effect in accordance with the provisions of the documents evidencing such options.

### II. AMENDMENT OF THE PLAN

The Board shall have complete and exclusive power and authority to amend or modify the Plan in any or all respects. However, the Board shall not, without the approval of the Corporation's stockholders, (i) increase the maximum number of shares issuable under the Plan, except for permissible adjustments in the event of certain changes in the Corporation's capitalization, (ii) materially modify the eligibility requirements for Plan participation or (iii) materially increase the benefits accruing to Plan participants. No such amendment or modification shall, without the consent of the Optionees, adversely affect their rights and obligations under their outstanding options.

### IIII. USE OF PROCEEDS

Any cash proceeds received by the Corporation from the sale of options and/or the sale of shares of Common Stock under the Plan shall be used for general corporate purposes.

### IV. REGULATORY APPROVALS

The implementation of the Plan, the granting of any option under the Plan and the issuance of any shares of Common Stock upon the exercise of any option shall be subject to the Corporation's procurement of all approvals and permits required by regulatory authorities having jurisdiction over the Plan, the options granted under it and the shares of Common Stock issued pursuant to it.

### V. NO EMPLOYMENT OR SERVICE RIGHTS

Nothing in the Plan shall confer upon the Optionee any right to continue in Service for any period of specific duration or interfere with or otherwise restrict in any way the rights of the Corporation (or any Parent or Subsidiary employing or retaining the Optionee) or of the Optionee, which rights are hereby expressly reserved by each, to terminate the Optionee's Service at any time for any reason, with or without cause.

### VI. FOREIGN LAW PROVISIONS

Additional or different provisions for individual non-Swiss Subsidiaries may be incorporated in one or more Addenda to the Plan. Such Addenda shall have full force and effect with respect to the Subsidiaries to which they apply. In the event of a conflict between the provisions of such an Addendum and one or more other provisions of the Plan, the provisions of the Addendum shall be controlling.

## APPENDIX

The following definitions shall be in effect under the Plan:

A. **Agreement** shall mean this Stock Purchase Agreement.

B. **Board** shall mean the Corporation's Board of Directors.

C. **Committee** shall mean a committee of two (2) or more members of Board and/or Strategy Board to exercise one or more administrative functions under the Plan.

D. **Common Stock** shall mean the Corporation's common stock.

E. **Corporate Transaction** shall mean either of the following stockholder-approved transactions to which the Corporation is a party:

    (i) a merger or consolidation in which securities possessing more than fifty percent (50%) of the total combined voting power of the Corporation's outstanding securities are transferred to a person or persons different from the persons holding those securities immediately prior to such transaction, or

    (ii) the sale, transfer or other disposition of all or substantially all of the Corporation's assets in complete liquidation or dissolution of the Corporation.

F. **Corporation** shall mean Actelion Ltd., a Swiss corporation.

G. **Employee** shall mean an individual who is in the employ of the Corporation (or any Parent or Subsidiary), subject to the control and direction of the Employer entity as to both the work to be performed and the manner and method of performance.

H. **Exercise Date** shall mean the date on which the Corporation shall have received written notice of the option exercise.

I. **Exercise Price** shall have the meaning assigned to such term in Paragraph A.1.

J. **Fair Market Value** per share of Common Stock on any relevant date shall be determined in accordance with the following provision: Fair Market Value shall be the closing selling price per share of Common Stock on the date in question, as such price is reported by the market organization's official reporting system. If there is no closing selling price for the Common Stock on the date in question, then the Fair Market Value shall be the closing selling price on the last preceding date for which such quotation exists.

K. **Grant Notice** shall mean the Notice of Grant of Stock Option pursuant to which Optionee has been informed of the basic terms of the Option.

L. **Involuntary Termination** shall mean the termination of the Service of any individual which occurs by reason of:

    (i) such individual's involuntary dismissal or discharge by the Corporation for reasons other than Cause, or

      (ii)    such individual's voluntary resignation following (A) a change in his or her position with the Corporation which materially reduces his or her level of responsibility, (B) a reduction in his or her level of compensation (including base salary, fringe benefits and participation in corporate-performance based bonus or incentive programs) by more than fifteen percent (15%) or (C) a relocation of such individual's place of employment by more than fifty (50) kilometers, provided and only if such change, reduction or relocation is effected without the individual's consent.

M.   **Cause** shall mean the commission of any act of fraud, embezzlement or dishonesty by the Optionee, any unauthorized use or disclosure by such person of confidential information or trade secrets of the Corporation (or any Parent or Subsidiary), or any other intentional misconduct by such person adversely affecting the business or affairs of the Corporation (or any Parent or Subsidiary) in a material manner. The foregoing definition shall not be deemed to be inclusive of all the acts or omissions which the Corporation (or any Parent or Subsidiary) may consider as grounds for the dismissal or discharge of any Optionee or other person in the Service of the Corporation (or any Parent or Subsidiary).

N.   **Option** shall have the meaning assigned to such term in Paragraph A.1.

O.   **Option Agreement** shall mean all agreements and other documents evidencing the Option.

P.   **Optionee** shall mean any person to whom an Option is granted under the Plan.

Q.   **Parent** shall mean any corporation (other than the Corporation) in an unbroken chain of corporations ending with the Corporation, provided each corporation in the unbroken chain (other than the Corporation) owns, at the time of the determination, stock possessing fifty percent (50%) or more of the total combined voting power of all classes of stock in one of the other corporations in such chain.

R.   **Plan** shall mean the Corporation's 2000 Stock Option Plan, as set forth in this document.

S.   **Plan Administrator** shall mean either the Board or the Committee, to the extent the Committee is at the time responsible for the administration of the Plan.

T.   **Recapitalization** shall mean any stock split, stock dividend, recapitalization, combination of shares, exchange of shares or other change affecting the Corporation's outstanding Common Stock as a class without the Corporation's receipt of consideration.

U.   **Reorganization** shall mean any of the following transactions:

      (i)    a merger or consolidation in which the Corporation is not the surviving entity,

      (ii)    a sale, transfer or other disposition of all or substantially all of the Corporation's assets,

      (iii)    a reverse merger in which the Corporation is the surviving entity but in which the Corporation's outstanding voting securities are transferred in whole or in part to a person or persons different from the persons holding those securities immediately prior to the merger, or

      (iv)    any transaction effected primarily to change the state in which the Corporation is incorporated or to create a holding company structure.

V. **Service** shall mean the provision of services to the Corporation (or any Parent or Subsidiary) by a person in the capacity of an Employee, a non-employee member of the Board of Directors or a consultant or independent advisor, except to the extent otherwise specifically provided in the documents evidencing the option grant.

W. **Strategy Board** shall mean the Corporation's Strategy Board.

X. **Subsidiary** shall mean any corporation (other than the Corporation) in an unbroken chain of corporations beginning with the Corporation, provided each corporation (other than the last corporation) in the unbroken chain owns, at the time of the determination, stock possessing fifty percent (50%) or more of the total combined voting power of all classes of stock in one of the other corporations in such chain.

Christina Kwan
HR Administrator



Rick Lee
20620 Candlewood Hollow
Estero, FL 33928

South San Francisco, February 17, 2010

Dear Rick:

Enclosed are your final paychecks for all wages due less applicable deductions and withholdings:

- Paycheck from 2/16/10 to 2/17/10
- Check for accrued vacation days

Your healthcare benefits including medical, dental and vision coverage will continue through February 28, 2010. You will receive via mail COBRA notification from TLC Administration regarding continuation of health care coverage. You must make certain elections within specific deadlines set forth in the notice and return the election form to TLC.

If you have any vested, unexercised Actelion equity, please note that you have the following time frame to transact:

- 30 days from your termination day for equity which were issued <u>before 2005</u>.
- 60 days from your termination day for equity which were issued <u>after 2005</u>.

You must have a cash or brokerage account with UBS before you can exercise your options. If you have questions on how to open an account on line, you may contact UBS Customer Service at +41 844 853 051.

You have the option to convert your Actelion Group Life Insurance to an individual plan. If you wish to do so, please complete the attached Group Life Conversion Application and mail directly to Anthem Life within 31 days of your termination date.

If you have any questions, please contact me at 650-624-6930.

Sincerely,

Christina Kwan
HR Administrator

**Exhibit B**

Encls.

Actelion Pharmaceuticals US, Inc.
5000 Shoreline Ct. | Suite 200 | South San Francisco | California 94080 | phone +1 650 624 6900 | fax +1 650 589 1501 | www.actelion.com

THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA

**I.  CASE STYLE**

RICHARD S. LEE,

    Plaintiff,

vs.

ACTELION PHARMACEUTICALS US, INC.,
A foreign corporation,

    Defendant.

Case #: 10-CA-004180
Judge: Judge: Fuller, Joseph C

**FILED**

OCT 0 7 2010

CHARLIE GREEN, CLERK
CIRCUIT/COUNTY COURTS
BY_____D.C.

**II.  TYPE OF CASE**

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☒ Negligence—other
  - ☐ Business governance
  - ☒ Business torts
  - ☐ Environmental/Toxic tort
  - ☐ Third party indemnification
  - ☐ Construction defect
  - ☐ Mass tort
  - ☐ Negligent security
  - ☐ Nursing home negligence
  - ☐ Premises liability—commercial
  - ☐ Premises liability—residential
- ☐ Products liability
- ☐ Real property/Mortgage foreclosure
  - ☐ Commercial foreclosure $0 - $50,000
  - ☐ Commercial foreclosure $50,001 - $249,999
  - ☐ Commercial foreclosure $250,000 or more

- ☐ Homestead residential foreclosure $0 - $50,000
- ☐ Homestead residential foreclosure $50,001 - $249,999
- ☐ Homestead residential foreclosure $250,000 or more
- ☐ Nonhomestead residential foreclosure
  $0 - $50,000
- ☐ Nonhomestead residential foreclosure
  $50,001 - $249,999
- ☐ Nonhomestead residential foreclosure
  $250,000 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more
- ☐ Professional malpractice
  - ☐ Malpractice—business
  - ☐ Malpractice—medical
  - ☐ Malpractice—other professional
- ☐ Other
  - ☐ Antitrust/Trade regulation
  - ☐ Business transactions
  - ☐ Constitutional challenge—statute or ordinance

- ☐ Constitutional challenge—proposed amendment
- ☐ Corporate trusts
- ☐ Discrimination—employment or other
- ☐ Insurance claims
- ☐ Intellectual property

- ☐ Libel/Slander
- ☐ Shareholder derivative action
- ☐ Securities litigation
- ☐ Trade secrets
- ☐ Trust litigation

**III.  REMEDIES SOUGHT** (check all that apply):
    ☒ Monetary
    ☐ Non-monetary declaratory or injunctive relief
    ☐ Punitive

IV. NUMBER OF CAUSES OF ACTION: [2]

Negligent Misrepresentation and Breach of Fiduciary Duty

V. IS THIS CASE A CLASS ACTION LAWSUIT?
☐ yes
X no

VI. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?
X no
☐ yes If "yes," list all related cases by name, case number, and court.

VII. IS JURY TRIAL DEMANDED IN COMPLAINT?
X yes
☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Date: October 5, 2010

WELDON & ROTHMAN, PL
7935 Airport-Pulling Road N, Suite 205
Naples, Florida 34109
Tel: (239) 262-2141
Fax: (239) 262-2342

By: _____
Bradley P. Rothman
Florida Bar No.: 0677345

# OFFICIAL RECEIPT
## Lee County Clerk of Courts

Payor
HERE COMES THE JUDGE

Receipt No.
**ODFM-2010-195782**

Transaction Date
10/13/2010

| Description | Amount Paid |
|---|---|
| Lee, Richard S | |
| 10-CA-004180 | |
| Lee, Richard S Plaintiff vs Actelion Pharmaceuticals US Inc Defendant | |
| Copy Work (CA) | 17.00 |
| **SUBTOTAL** | 17.00 |
| Remaining Balance Due: $0.00 | |

**PAYMENT TOTAL** 17.00

Check (Ref #1539) Tendered 17.00
Total Tendered 17.00
Change 0.00

10/13/2010  Cashier  Audit
01:53 PM  Station cto011  265389155

## OFFICIAL RECEIPT